# H. W. L. McCloskey, by his next friend John J. McCloskey, v. The Chautauqua Lake Ice Company, Appellant.

[Marked to be reported.]

*Negligence—Definition of negligence.*

Negligence is the want of care required by the circumstances. It may lie in omission or commission, in the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or in doing what such a person under the existing circumstances would not have done.

*Negligence—Evidence—Scintilla—Question for jury.*

He who alleges negligence as the basis of his suit must prove it, because the injury alone affords no cause of action. If the evidence submitted to sustain his allegation amounts to more than a scintilla, it presents a question for the jury, although it is flatly contradicted by the evidence of the defendant.

*Negligence—Evidence—Ice wagon—Backing of wagon against curb— Infant of tender years.*

In an action against an ice company to recover damages for personal injuries to a boy six years old, resulting from the alleged negligent backing of an ice wagon by one of defendant's drivers, the case is for the jury, where the evidence tends to show that on the street where the accident occurred pavement blocks were piled in the cartway against the curb; that in front of a butcher shop an opening was left wide enough to let a wagon back in, that the boy was caught while entering this open space by an ice wagon backing in to deliver ice, and the evidence is conflicting as to whether the driver before backing his wagon looked to see whether any one was in the opening, or approaching it from the street.

Argued Nov. 6, 1895. Appeal, No. 250, Oct. T., 1895, by defendant, from judgment of C. P. No. 1, Allegheny Co., March Term, 1894, No. 720, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. GREEN and WILLIAMS, JJ., dissent.

Trespass for personal injuries. Before SLAGLE, J.

At the trial it appeared that on October 10, 1893, plaintiff, a boy six years old, was injured by defendant's ice wagon in front of Ketterer's butcher shop on Centre avenue, Pittsburg. The pavement on the other side of the street had been taken up

for some time, and blocks for a new pavement were piled on the side of the street where the accident occurred, with open spaces at intervals forming passages from the sidewalk to the street.   One of the spaces was immediately in front of Ketterer's shop, and was from five to seven feet in width.   At the time of the accident the ice wagon was being backed into this space to deliver ice to the butcher shop.   The boy was caught in the space, and before he could get away was pinned between a tree box and the steps of the wagon and sustained serious injuries. The testimony as to the exact manner in which the accident occurred is quoted at length in the opinion of the Supreme Court and in the dissenting opinion.

The court charged in part as follows :

[These wagons you have seen upon the streets ; and I presume this was like the other wagons.   How this was constructed particularly was not stated, but I think they are generally closed wagons, with a bulkhead right behind the driver so that he cannot see through the wagon; his only opportunity is to see around on the outside.   That is what he did.   He says he looked first on one side to see that there was no person on the sidewalk before he undertook to turn his wagon against it, and that there was nobody there ; that then he looked on the other side.   Whether he looked first to the pavement, or first to the street, he does not say ; but he looked at the sidewalk, looked around to see whether there was any person there.   Or rather, he says, to see whether his wagon would come to the right place. He did not say that he looked to see whether there was any person there or not; but he says there was no person there at that time.   He looked on the other side to see if there was any person coming up the track of the railroad, because in turning his wagon it would be necessary for him to turn his wheels around upon the track of the railway.   He says that he looked around to see if there was any danger there, and that he saw nobody, saw nothing.   Now, was that all that was necessary ?   If it was, if that was all that an ordinarily careful man would have done, then he did all that he was bound to do.   But you must remember, in considering that, that he could not see through the wagon, that he looked around the wagon at the sides.   If there was any person back of the wagon he could not see that person in that way.   If this child was on the street running towards the wagon then he would have seen it in all probability.] [2]

Defendant's point was as follows :

That under the evidence the verdict must be for defendant. *Answer :* Refused and bill sealed for defendant. [1]

Verdict and judgment for plaintiff for $8,000. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*Johns McCleave, Wm. H. McClung* and *J. A. Evans* with him, for appellant.—The injury clearly resulted from the sudden and unanticipated act of the child in rushing from a place where there was no danger to the only point where harm could possibly have come : Pass. Ry. v. Connell, 88 Pa. 520 ; Chilton v. Central Traction Co., 152 Pa. 425 ; Flanagan v. People's Pass. Ry., 163 Pa. 102.

*W. C. Stillwagen,* for appellee.—Negligence is always a question for the jury where there is any doubt as to the facts or the inferences to be drawn from them : Penna. R. R. v. Barnett, 59 Pa. 259 ; Johnson v. Bruner, 61 Pa. 58 ; McKee v. Bidwell, 74 Pa. 218 ; Ledig v. Germania Brewing Co., 153 Pa. 298 ; Thurber v. Harlem, 60 N. Y. 326 ; Quirk v. Holt, 99 Mass. 164 ; Murphy v. Orr, 96 N. Y. 14 ; Moebus v. Herrmann, 108 N. Y. 349.

OPINION BY MR. JUSTICE McCOLLUM, March 2, 1896 :

The principal question raised by this appeal is whether the injury the plaintiff received on the 10th of October, 1893, was caused by the negligence of the defendant's servant. There can be no doubt that the injury was properly attributable to the act of the servant in backing the ice wagon against the curb at the opening in front of Ketterer's shop, but whether it was a negligent act is another and different matter. He who alleges negligence as the basis of his suit must prove it, because the injury alone affords no cause of action. If the evidence submitted to sustain his allegation amounts to more than a scintilla it presents a question for the jury although it is flatly contradicted by the evidence of the defendant. Negligence is the, want of care required by the circumstances. It may " lie in omission or commission, in the failure to do what a reasonable

and prudent person would ordinarily have done under the circumstances of the situation, or in doing what such a person under the existing circumstances would not have done." Baltimore Railroad Co. v. Jones, 95 U. S. 439. There is no question of contributory negligence in the case because the age of the plaintiff excludes it. It is not claimed that the verdict is excessive, and the criticism of the excerpt from the charge which is the subject of the second specification appears to us as destitute of merit and unwarranted. We regard the charge as clear and impartial, and we fail to discover anything in it to mislead or prejudice the jury against the defendant. We therefore limit our further consideration of the case to the single question whether the evidence was sufficient to warrant the jury in finding that the negligence of the defendant's servant was the proximate cause of the plaintiff's injury. If it was, the judgment must be affirmed, and if it was not, the court erred in refusing the defendant's point, and the judgment must be reversed.

The plaintiff was lawfully in the place where he was caught and his leg was crushed by the ice wagon. His position when discovered would indicate that he was caught while entering the open space maintained for the accommodation of the adjacent property owners and the general public in getting from the street to the sidewalk and from the sidewalk to the street. The placing of the ice wagon against the curb in the manner described was an obstruction to travel through this space and there was no apparent necessity for it. It may have lightened the labor of delivering the ice to the customer but it was by no means indispensable to the proper performance of that work. A few minutes before the occurrence in question, and but a short distance from it, the ice was delivered to another customer through a similar opening upon the sidewalk, while the horses and wagon were standing parallel with the curb as they were near Ketterer's before the driver turned the horses toward the center of the street to back the wagon to the open space. The reason given for the change in the method of delivery was that the amount of ice to be unloaded at the latter place was greater than at the former. If the wagon had remained parallel with the curb at Ketterer's as it was at Voscamp's when the ice was taken from it, it is quite certain that there would have been no occasion for this suit.

We think there can be no serious doubt that in backing the wagon against the curb in the manner described it was the duty of the person having charge of it to see that the way was clear for doing so without injury to parties entering or leaving the open space which he was about to obstruct, and that his failure to exercise this precaution would constitute negligence, for the consequences of which his employer would be responsible. Did Malone, the driver, do what an ordinarily prudent man would have done under the circumstances? Did he look to see whether the way was clear for him to back the wagon against the curb in the manner he did? He says that when he drove up to the open space, he stopped and looked out on the left hand side of the wagon " to see whether he had the rear end of it in the center of the space or he could swing around and get into the space," and that he did not "see any one in the open space or near there." He says also that he did not see the plaintiff before he was caught and crushed between the step of the wagon and the tree box. Eugene Winslow, a witness called by the plaintiff, testified that he was driving up Centre avenue about a hundred and fifty feet below the ice wagon and that it and the horses were then standing parallel with the curb; that he saw the plaintiff crossing the street towards the opening in front of Ketterer's shop and that he had reached the middle of the street before Malone commenced to turn the horses around. We quote his description of what followed: He said: " I saw the driver start to pull his team around to back in there, and then as soon as the boy saw the horses he tried to get out of the way and ran for the curbstone. He thought the driver, as I thought myself, intended to go down Centre avenue, but instead he went to back into the curbstone, and the boy started for the curbstone and he ran up to the tree box, and before he could get away from the tree box the steps of the wagon caught him in the leg and held him tight and crushed him. I called to the driver to pull out, and he stuck his head out of the wagon. He has to look around to see, he can't see anything, he is all boxed up." This description of the occurrence was not changed or materially qualified by the cross-examination, nor antagonized in any degree by the testimony of any witness except that of Malone. In fact, Malone and Winslow were the only witnesses in the case whose testimony relates to or in any wise affects the question of the

alleged negligence of the defendant. But it seems to us that their testimony required the submission of this question to the jury. If Winslow was where he said he was when Malone started to turn his horses around, and the plaintiff was then in the center of the street and advancing toward the opening would not Malone, in the exercise of the care required by the circumstances, have seen them ?   He says he did not see either of them, although he says he looked to see if the way was clear for him to back against the curb. If Malone had seen the plaintiff in the center of the street, and running toward the opening, under the circumstances described by Winslow, ought he not to have relinquished his purpose to back the wagon against the curb, until the obvious danger the plaintiff was in was passed? If Malone had the knowledge that Winslow had respecting the position and movements of the plaintiff, can it be said that in backing against the curb he exercised the care required by the circumstances ?   It is true, that the testimony of Malone and Winslow was somewhat conflicting, but if that of the latter was believed, it afforded, we think, a reasonable basis for an inference that the negligence of the former was the proximate cause of the injury the plaintiff received.

Judgment affirmed.


DISSENTING OPINION BY Mr. JUSTICE GREEN:

I find myself unable to agree with the opinion of the majority of the court in this case and for reasons which require an expression of record.   The difficulty I have is to discover any act of negligence on the part of defendant's driver. It is claimed that he was negligent because he did not " see that the way was clear for " backing his wagon " without injury to parties entering or leaving the open space which he was about to obstruct." Granting that this proposition would be correct in the abstract the question remains is it applicable to the undisputed facts of the case.   By undisputed I mean the facts established by the plaintiff's evidence and not contradicted.   It was of course the duty of the driver not to back his wagon upon persons on the sidewalk or engaged in the act of entering upon or leaving the sidewalk at the opening between the two piles of stones on the sidewalk.   Had the plaintiff been in either of these categories the case was properly before the jury upon its facts.   But

an examination of the plaintiff's testimony shows conclusively that he was not. It is proved affirmatively by the plaintiff's own witness that when the driver turned his horses to back the wagon the plaintiff was not between the wagon and the curb nor by the side of the wagon either on the right or left side. On the contrary he was, immediately before that, on the opposite side of the street and consequently could not possibly have been seen at that moment on the same side of the street as the wagon, no matter how much or how often the driver had looked there for him.   Now the plaintiff's witness testified on this subject as follows : Q. When was it that you first noticed any boy, how long before the accident happened ?   A. I just noticed him when he started to cross the street.   Q. Did you notice whereabouts he came from when he started to cross the street? A. Yes, sir.   Q. Where ?   A. Came from the side of the street he lives on.   Q. He came from the side of the street he lived on ?   A. Yes, sir.   Q. Which side is that? A. Right hand side going out.   Q. He came from the right hand side of the street, and attempted to cross towards the butcher shop?   A. Yes, sir. Q. Now how far across the street had he got when you first saw him?   A. Well I saw him, I think, when he stepped off the curb to cross the street, and he got about the middle of the street when the driver started to pull around.   Then he ran for the other side.   Q. He was in about the middle of the street? Well whereabouts in respect to the car tracks was he, between the car tracks, or between the car tracks and the left hand curb ? A. He was nearly between the car tracks ; I couldn't say exactly. Q. And then when he was between the car tracks on the street the wagon commenced to swing around?   A. Yes, sir.   Q. It was a fifth wheel wagon?   A. Yes, sir, it was a fifth wheel wagon.   Q. And when the wagon commenced to swing around you saw the boy make a dart or run for the opposite side? A. Yes, sir, to get out of the way.   Q. When he was running for the other sidewalk you say he got caught between the step of the wagon and the tree box?   A. Yes, sir, he got caught. Q. Was he in the act of running when he got caught?   A. He ran up to the curbstone and I suppose he stopped and tried to get through the opening, and before he could get through the wagon caught him.   Q. Get through what opening—the opening between the tree box and the pile of stones ?   A. He tried

to get up near the opening, where the opening was, to go along. Q. That is between the tree box and the stones piled on the sidewalk? Is that what you mean? A. Yes, sir. Q. He started from the middle of the street to run towards that opening. . . . How long did he stop before he got caught? A. Well, he didn't stop very long before he got caught because the wagon caught him before he could get away. Q. Well, how long had he stopped would you say? The wagon was in the act of turning? A. Yes, sir. Q. When you saw him in the middle of the street start for that opening? A. Yes, sir. Q. You saw him after he started from the other side? A. Yes, sir, I saw him after he started. Q. Going towards the left hand side? A. Yes, sir. Q. How far out in the street was he when you first saw him? A. He was pretty close to the other side of the street. Q. Which side? A. The right hand, the one he left. . . . Q. The wagon started to turn when you saw him in the middle of the street, when he commenced to run? A. It was then in the act of turning, yes, sir. Q. Did he start to run until the wagon started to back? A. No, sir. Q. He did not? A. No, sir.

All the foregoing is the plaintiff's testimony. It was not contradicted by anybody. It is the undisputed testimony of the case. What does it prove? It proves that the wagon was in the act of turning while the boy was in the middle of the street. It proves that looking behind the wagon or to either side of the wagon would not have disclosed the boy because he was not there. It proves that while the wagon was in motion the boy suddenly darted forward on a run in an attempt to get through the opening before the wagon reached the curb. Was the driver legally bound to anticipate such a movement and take precautions against it? If he was not he was not guilty of any negligence. We have decided this question in several cases. In Pass. R'wy Co. v. Connell, 88 Pa. 520, we said, " The accident here complained of could not have happened but by the direct act of the plaintiff (a child six years and nine months old) in his sudden and improper attempt to board the car, and this when the car was moving slowly, and when the driver had no reason to anticipate danger to any one young or old. It is manifest that this accident occurred not because of any defect in the vehicle, nor from neglect of the person who had charge of it, but from the sudden and unanticipated act of the child itself,

which could neither be foreseen nor guarded against, and it is a fact that the thoughtless act of a child may bring about an accident for which even a railroad company will not be held liable."

Just as in the present case. The boy was not crossing the street at a public crossing, he was on the opposite side of the street the instant before the wagon turned, at a place therefore at which the driver was under no duty to expect or look for persons who might be in danger from the backing of his wagon, and he had actually commenced the turning of the wagon when the boy was in the middle of the street. The accident occurred because the boy ran in behind the wagon suddenly without any kind of nòtice of his intention, without the slightest reason for the driver to anticipate his action or to take precautions against it. The wagon was necessarily moving very slowly, and, while there was the most ample opportunity for the boy to see that the wagon was about to occupy the open space on the sidewalk there was absolutely nothing to lead the driver to suppose there was any such purpose to be carried out by any one.

In the case of Chilton v. Central Traction Co., 152 Pa. 425, we said, in a case where the plaintiff was a child of five and a half years, " We have then the case of a boy who unexpectedly, and without any warning, runs from the pavement against a moving car passing at the time. The gripman saw the child plainly on the pavement before he put on his grip to go ahead fast. The child turned immediately and ran out into the street, and, for anything that appears, before the car could be stopped, the accident occurred. The defendant's third point called upon the court below to instruct the jury that there was no evidence of negligence on the part of the defendant company. The point should have been affirmed. It is grave error to submit the question of negligence to the jury, where there is no evidence of it."

In the case of Flanagan v. People's Pass. Ry. Co., 163 Pa. 102, the person killed was a girl about seven and a half years old. She ran across a street in front of an approaching car, the driver called to her saying, " Hey, there," the girl replied, " Never mind I can get apast," she was struck by the horses and killed. The court below granted a compulsory nonsuit which we sustained. Our Brother MITCHELL delivering the opinion said, " As to the duty of the driver to stop, it must be remembered that he had passed the crossing at Borden street where he was bound to

expect, and therefore to keep a special watch for, foot passengers, and the little girl was still on the pavement though about to step into the street, when he gave her the warning.  The circumstances show that he was attending to his business and using his judgment in the way the situation seemed to require. The result proved that it would have been better to have stopped or checked the car at first, but wisdom after the event is easy, and looking only at the facts as they appeared to the driver then, the jury would not be justified in saying that he ought to have foreseen the necessity of the stopping.  The learned judge was right in holding that there was no sufficient evidence of the defendant's negligence."

It will be observed that in both the last cited cases the driver saw the child before the accident occurred, and in the last of them the child attempted to cross the street in the full view of the driver, yet in both we held there was no liability, because there was no sufficient evidence of negligence on the part of the driver.  We held this ruling in the last case because the child was attempting to cross at a place where there was no crossing, and therefore the driver was not subject to a legal duty to stop although the girl was in sight.  With how much more force does the doctrine apply in the case at bar where the same attempt was made to cross the street where there was no crossing, and the plaintiff could not be seen in the vicinity of the wagon because he was not there, and the driver did not see him and was subject to no duty to look for him at the place where he was immediately before the accident happened.  In the face of the foregoing decisions and many others that might be cited, the writer is entirely unable to derive any inference of negligence against the driver because he cannot find in the plaintiff's testimony, or in the case, a single fact upon which such an accusation can be based.  If it is contended that he was negligent because he did not see the plaintiff before or at the moment of the accident, the reply is that he was not bound to look for him at the place where he was, either on the opposite side or in the middle of the street, and therefore he did not violate any legal duty in not seeing him.  But the further and still more conclusive reply is that he could not anticipate the sudden action of the plaintiff in rushing to the opening in the pile of stones on the sidewalk.  It could not have required any more than a very

few seconds for him to do this, and it is difficult to understand how the driver could attend to the business in which he was engaged and yet give every moment of his time to looking out on both sides of the street, and in the middle of it also, to see if there were persons possibly there, and especially to learn whether any such possible persons entertained a purpose of darting in behind his wagon in order to get through the opening in the wall of stones. As a matter of course such conditions cannot be anticipated, and consequently there can be no breach of duty in not foreseeing them.

I cannot assent to the suggestion that the driver was guilty of an unlawful obstruction of the street by backing his wagon to the curbstone in order to unload his ice. Such use of the street and sidewalk, if unlawful for the delivery of ice, would be equally unlawful for the delivery of coal, of furniture, of merchandise, or of any kind of commodities, both to and from the houses abutting on the sidewalk. But for this court to declare such modes of loading and unloading wagons, carts, drays, omnibuses and other vehicles to be unlawful, would be a virtual suspension of business in all the large towns and cities of the commonwealth. We certainly would not venture upon any such ruling as that without a most deliberate consideration and after full argument. I do not regard such uses of the streets and sidewalks as in the least degree unlawful, and therefore I consider that when this driver backed his ice wagon to the curb in front of the butcher's shop for the purpose of delivering ice he had a perfect legal right to do so with which no one else might interfere. In all the large cities there are many thousands of such instances occurring on every working day of the year.

I also cannot agree to the proposition that the plaintiff was in a position where he had a right to be, at the moment of the accident. The space was already being occupied when he reached it and he should not have attempted to get through with the visible and lawful occupancy proceeding in his full view. Had he been an adult he could not recover on the ground of his own contributory negligence. But there is no right of action against the defendant unless there was actual negligence on the part of the driver. The open space in the wall of stones was left for the express purpose of its being used to back up wagons

for the delivery of articles, as the butcher testified.   The driver had about eighteen hundred pounds of ice to deliver, and he had a right to deliver it in the most convenient way without obstruction to the sidewalk.   The open space was manifestly not intended for foot passengers as there was no crossing at that place and no testimony that it was so used.

Upon the whole case I am clearly of opinion that the judgment should be reversed.

MR. JUSTICE WILLIAMS :

I agree with my Brother GREEN that this accident was due to the rapid and unexpected movements of the boy induced by a mistaken idea of what the driver was about to do,—and I would reverse.